FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Aug 20, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AARON R.,<br><br>               Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>               Defendant. | NO. 1:24-CV-3045-TOR<br><br>ORDER ON MOTIONS FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 9; 10). Plaintiff is represented by D. James Tree. Defendant is represented by Brian M. Donovan, Franco L. Becia, and Frederick Fripps. The matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, the Court DENIES Plaintiff's motion (ECF No. 9) and GRANTS Defendant's motion (ECF No. 10).

//

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 1

1

**JURISDICTION**

2          The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

3    1383(c)(3).

4

**STANDARD OF REVIEW**

5          A district court's review of the Commissioner of Social Security's final

6    decision is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7    limited: the Commissioner's decision will be disturbed "only if it is not supported

8    by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

9    1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

10   relevant evidence that "a reasonable mind might accept as adequate to support a

11   conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

12   substantial evidence equates to "more than a mere scintilla[,] but less than a

13   preponderance." *Id.* (quotation and citation omitted).  In determining whether this

14   standard has been satisfied, a reviewing court must consider the entire record as a

15   whole rather than searching for supporting evidence in isolation.  *Id.*

16         In reviewing a denial of benefits, a district court may not substitute its

17   judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

18   1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

19   rational interpretation, [the court] must uphold the ALJ's findings if they are

20   supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity

of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the Commissioner must find that the claimant is disabled and entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 11, 2017, Plaintiff protectively filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of July 1, 2014.  Tr. 21.  The application was denied initially and upon reconsideration.  *Id.* On January 9, 2020, a telephonic hearing was held before an administrative law judge ("ALJ").  Tr. 36.  On January 23, 2020, the ALJ denied Plaintiff's claim.  Tr. 18.  The Appeals Council denied review on October 2, 2020.  Tr. 11.  On August 9, 2022, this Court granted Plaintiff's motion for summary judgment and remanded for the ALJ to reconsider Plaintiff's subjective symptom testimony and the medical testimony of Doctors Kevin Walsh and Tasmyn Bowes.  Tr. 1452-69.

A telephonic rehearing was held on November 29, 2023.  Tr. 1384-1420. On January 24, 2024, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act.  Tr. 1356.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff was engaged in substantial gainful activity for a three-month period, from December 2019 through February 2020.  Tr. 1361-62.  From March 2020 forward, however, the ALJ determined there was a continuous 12-month period in which

Plaintiff did not engage in substantial gainful activity.  Tr. 1362.  The ALJ

therefore tailored his findings to the period in which there was no substantial

gainful activity.  *Id.*

At step two, the ALJ determined Plaintiff had the following severe

impairments: ulcerative colitis, left shoulder rotator cuff tear (status post-repair),

left carpal tunnel syndrome (status post-repair), carpal tunnel release, attention

deficit hyperactivity disorder ("ADHD"), methamphetamine use disorder,

depression, post-traumatic stress disorder ("PTSD"), and anxiety disorder.  *Id.*  At

step three, the ALJ found that Plaintiff's impairments did not meet or medically

equal the severity of a listed impairment.  Tr. 1363.  The ALJ then found that

Plaintiff had the RFC to perform light work within the following limitations:

> [A]ble to understand, remember, and carry out simple instructions and
> tasks; able to use judgment to make simple work-related decisions;
> cannot perform work requiring a specific production rate (such as
> assembly line work) or work that requires hourly quotas; can deal with
> only rare changes in the work setting; occasional overhead reaching;
> frequent reaching at or below shoulder level; occasional stooping and
> crouching; no crawling, kneeling, or climbing ramps, stairs, ropes,
> ladders, or scaffolds; no concentrated exposure to vibrations; no work
> at heights or in proximity to hazardous conditions; and ready access to
> a bathroom at the workplace.

Tr. 1366.

At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work.  Tr. 1374.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including as a mail clerk, ticket seller, and marker.  Tr. 1375.  Accordingly, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act.  *Id.*

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff submits the following issues for this Court's review:

1. Whether the ALJ erred in finding that Plaintiff engaged in substantial gainful activity from December 2019 through February 2020;

2. Whether the ALJ erred in finding that Plaintiff's ulcerative colitis did not meet Listing 5.06B;

3. Whether the ALJ erred in assessing Plaintiff's subjective symptom testimony; and

4. Whether the ALJ erred in assessing the medical opinions.

ECF No. 9 at 2.

## DISCUSSION

### I.    Law of the Case Doctrine

As a preliminary matter, the parties deliberate over whether the law of the

case doctrine precludes Plaintiff's arguments regarding issues one (substantial gainful activity) and two (Listing 5.06B). *See* ECF Nos. 9 at 3-4; 10 at 4-5.

The law of the case doctrine applies in social security cases. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The doctrine "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Id.* (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). In order for the doctrine to apply, the issue must have been "decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014) (internal quotations and citations omitted). The doctrine is inapplicable "when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567 (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)).

The Court's underlying decision summarized the ALJ's findings regarding Plaintiff's substantial gainful activity and his ability to meet Listing 5.06B. Tr. 1456-57. However, the Court's legal analysis was limited to the issues of Plaintiff's symptom testimony and the medical opinion evidence. Tr. 1457. At the end of the order, the Court instructed the ALJ to "reevaluate Plaintiff's subjective statements and the medical evidence of record, making findings on each of the five

steps of the sequential evaluation process, and taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim."  Tr. 1468.

The Court did not decide—explicitly or implicitly—whether the ALJ's analysis of Plaintiff's substantial gainful activity and of Listing 5.06B was correct, but focused instead on Plaintiff's subjective symptom testimony and the medical testimony of the experts.  The Commissioner has not explained how this amounted to a functional or implicit decision on Plaintiff's substantial gainful activity and ability to meet a Listing.  Indeed, the Court specifically provided in its remand order that the ALJ to reevaluate each step of the sequential evaluation.  The ALJ complied with that instruction and made new findings on remand.[1]  *Compare* Tr. 1361-63 (new findings on substantial gainful activity and Listings) *with* Tr. 23-24 (original findings on substantial gainful activity and Listings).  Accordingly, because the Court did not decide the issues Plaintiff now raises, the law of the case doctrine does not apply.  *Lummi Nation*, 763 F.3d at 1187.

//

//

---

[1] The ALJ's ultimate conclusions about whether Plaintiff engaged in substantial gainful activities and met a Listing did not change; however, the ALJ conducted a new analysis on both factors.

## II.    Substantial Gainful Activity

Plaintiff argues that the ALJ reversibly erred in finding that Plaintiff engaged in substantial gainful activity from December 2019 through February 2020.  ECF No. 9 at 3-4.  Plaintiff contends that he was earning under the threshold required for substantial gainful activity in December 2019 and that he was working in a sheltered environment from December 2019 through February 2020.  *Id.* Defendant responds that the ALJ's finding is supported by substantial evidence and that Plaintiff has not proffered sufficient evidence to establish that he was earning under the threshold amount or that he was working in a sheltered environment. ECF No. 10 at 4-5.

In determining whether work qualifies as substantial gainful activity, courts evaluate a claimant's monthly earnings.  20 C.F.R. § 416.974(a)(1).  The Commissioner has published a table that is updated annually and provides the monthly earnings that constitute substantial gainful activity.  *See* https://www.ssa.gov/OACT/COLA/sga.html (last accessed August 14, 2024).  In 2019, that amount was $1,220.  *Id.*  In 2020, the threshold was adjusted to $1,260. *Id.*

The ALJ found that in December 2019, Plaintiff worked at the FISH cold weather shelter for four hours a day, seven days a week, at a rate of $14.00 per hour.  Tr. 1362.  Therefore, the ALJ concluded that Plaintiff was earning

approximately $392.00 per week, or $1,568.00 per month. *Id.* Plaintiff complains that this calculation is incorrect. He argues that he obtained the job with FISH around October 18, 2019, and earned $2,198 from October to December 2019, which comes out to only $879.20 per month. ECF No. 9 at 3-4.

The ALJ's math is correct. Plaintiff worked at both FISH *and* the Dollar Tree in 2019 and earned a total of $2,954.74 from those jobs. Tr. 1586; 1582. Plaintiff began working at the Dollar Tree on October 10, 2019. Tr. 1106. It is not clear from the record when Plaintiff's employment at the Dollar Tree ended or precisely how many hours a week he was working at FISH in October and November 2019 versus the Dollar Tree, but it is uncontested that he was working at FISH in December 2020 at the rates and times established above. *See* Tr. 41; 75 (Plaintiff agreeing with the ALJ's approximation that his gross take-home salary from FISH was about $1,568 per month at his hearing). Based on this, the ALJ correctly computed Plaintiff's wages as being above those required to establish substantial gainful activity in December 2019.

Plaintiff also contends that he was working in a sheltered work environment from December 2019 through February 2020. ECF No. 9 at 4. The ALJ did not pass upon whether Plaintiff's work took place in a sheltered or special environment, as Plaintiff did not raise it in his hearing.

When a claimant's earnings are over the statutory minimum, there exists a

presumption of substantial gainful employment. *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). "The claimant may rebut a presumption based on earnings with evidence of his inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time." *Id.* (citing *Anderson v. Heckler*, 726 F.2d 455, 456 (8th Cir. 1984)).

"Sheltered employment is employment provided for handicapped individuals in a protected environment under an institutional program." SSR 83-33, 1983 WL 31255, at *7. Sheltered work performance does not establish the ability to engage in gainful employment. *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982). Plaintiff did not present any evidence, at the re-hearing or any other time, which established that he worked in a protected environment under an institutional program. Therefore, Plaintiff was not working in a sheltered environment.

Likewise, an employee working under special conditions may not be engaging in substantial gainful activity. An employee who is forced to stop or reduce their work because of the removal of special conditions that were related to their impairment and essential to their work is not be engaging in substantial activity. 20 C.F.R. § 416.973(c). Special conditions include things like (1) receiving special assistance from other employees, (2) receiving opportunities to take frequent rests, (3) receiving special equipment or work particularly suited to the impairment, (4) being able to work only because of specially arranged

circumstances, (5) receiving permission to work at a lower standard of productivity

or efficiency than other employees, and (6) receiving the opportunity to work only

because of a family relationship, past association with the employer, or the

employer's concern for the claimant's welfare.  20 C.F.R. § 416.973(c)(1)-(6); *see*

*also* 20 C.F.R. § 404.1573(c)(1)-(6).  However, work performed under only

minimal "special conditions may show that [claimants] have the necessary skills

and ability to work at the substantial gainful activity level."  §§ 416.973(c);

404.1573(c); *see also Katz v. Sec'y of Health & Hum. Servs.*, 972 F.2d 290, 294

(9th Cir. 1992) (minor modifications made for an employee's comfort could not

overcome the presumption that she had engaged in substantial gainful activity).

Plaintiff argues that the ALJ erred in failing to consider whether his

accommodations at FISH amounted to special conditions, and, if so, whether those

special conditions had any impact upon his analysis of Plaintiff's substantial

gainful activity.  In the main, Plaintiff contends that he was given the following

accommodations at FISH: being allowed to use the restroom at his stops, to carry

spare clothing, to work near his home, and to receive assistance with his deliveries.

The Court finds the ALJ did not err in failing to consider this claim because

Plaintiff did not raise it at the administrative hearing.  *See Jason F. v. Comm'r of*

*Soc. Sec.*, 2:17-CV-00228-JTR, 2018 WL 3015250, at *9 (E.D. Wash. June 15,

2018) (issue not raised before ALJ or Appeals Council was waived).  However, to

the extent there was any error in the ALJ failing to consider this claim, the Court finds the error was harmless. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (harmless error exists when an ALJ's error is "inconsequential to the ultimate disability determination") (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).  First, the accommodations did not rise to the level of "special conditions."  There is no evidence that Plaintiff being allowed to use the restroom at his stops or carry extra clothing with him required FISH to arrange any special accommodations on his behalf, or that FISH was even aware of such arrangements. ECF No. 9 at 3-4.  As to Plaintiff receiving assistance from FISH clients with loading and unloading his van, that also appears to be a completely unprompted coincidence.  There is nothing in the record which supports that Plaintiff's employer encouraged FISH clientele to assist with Plaintiff's deliveries; to the contrary, that assistance appears to be self-motivated.  *See* Tr. 49-50 (Plaintiff discussing that the homeless population FISH serves is usually eager to help unload the truck so they can retrieve their particular sleeping items sooner rather than later).  Likewise, the fact that FISH delivery drop-offs are near Plaintiff's home is a coincidence, not a special accommodation FISH had to make on Plaintiff's behalf.  As such, the aforementioned accommodations did not amount to special conditions of employment.

Second, and more importantly, the error is harmless because even if Plaintiff was not engaging in substantial gainful activity from December 2019 through February 2020, the ALJ concluded at step five that Plaintiff was capable of performing other work in the national economy, and that finding was supported by substantial evidence.  *See* Tr. 1375-76; *Moore v. Astrue*, No. CV-09-250-Cl, 2010 WL 5055748, at *5 (E.D. Wash. Nov. 24, 2010) ("Because the ALJ made properly supported alternate findings after completing the sequential evaluating process, any error which may have been made a step one is inconsequential to the ultimate nondisability determination."); *see also Reeves v. Barnhart*, No. C02-01251 MEJ, 2002 WL 31553376, at *15 (N.D. Cal. 2002) ("[I]t was harmless error when the ALJ concluded that work at Goodwill was substantial gainful activity because even assuming, *arguendo*, that it was not substantial gainful activity, at step five, the ALJ addressed other work that exists in the national economy Plaintiff can do."). Accordingly, the Court affirms the Commissioner's decision finding that Plaintiff engaged in substantial gainful activity from December 2019 through February 2020.

## III.    Listing 5.06B

Plaintiff argues that the ALJ erred at step three by finding he did not meet Listing 5.06B.  ECF No. 9 at 4.  The parties agree that Listing 5.06B is met with inflammatory bowel disease ("IBD") "documented by endoscopy, biopsy, imaging,

or operative findings, and . . . [t]wo of the following occurring within a

consecutive 12-month period and at least 60 days apart:"

1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or

2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or

3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping; or

4. Perianal disease with a draining abscess or fistula; or

5. Need for supplemental daily enteral nutrition via a gastrostomy, duodenostomy, or jejunostomy, or daily parenteral nutrition via a central venous catheter.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 5.06B.

Plaintiff believes he meets this Listing because on September 5, 2017, his serum albumin was less than 10.0g/dL. ECF No. 9 at 5. He further explains that his amenia with hemoglobin was less than 10.0 g/dL on September 14, 2017 and that he was diagnosed with a perennial fistula on October 13, 2017. *Id.* On November 8, 2017, he represents, his serum albumin was still less than 10.0g/dL. *Id.*

These facts do not support remand. In order for a claimant to meet a Listing, he "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990)).  Plaintiff did not meet Listing 5.06B, which specifically required that he present "two" of the listed symptoms "within a consecutive 12-month period and *at least 60 days apart*."  Listing 5.06B (emphasis added).  Although Plaintiff had different listed symptoms, no two were 60 days apart—Plaintiff discusses that his serum albumin was less than 10.0g/dL on September 5 and was still less than 10.0g/dl 64 days later, on November 8, but these are not two separate symptoms. Accordingly, substantial evidence supports the Commissioner's decision that the medical evidence fails to establish the requirements of Listing 5.06B.  Tr. 1364; *Ford*, 950 F.3d at 1148.

**IV.   Subjective Symptom Testimony**

Plaintiff argues that the ALJ erred in considering his subjective symptom testimony regarding his ulcerative colitis, left shoulder rotator cuff tear and carpal tunnel syndrome, and mental health issues.  ECF No. 9 at 6-16.  The Court reviews these contentions one at a time.

**A. Ulcerative Colitis Testimony**

Plaintiff submits that the ALJ failed to demonstrate clear and convincing reasons for rejecting his symptom testimony regarding his ulcerative colitis by (1) misconstruing the medical evidence and (2) overvaluing his various activities of daily living.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and

convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to produce some of his alleged symptoms of colitis, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence and other record evidence.

1  Tr. 1367.  The ALJ also determined that Plaintiff's activities were inconsistent

2  with the claimed disabling effects of his colitis.  Tr. 1368.

3          Respecting the time before Plaintiff began IV treatment, the ALJ

4  documented that the colitis was noted to be in clinical and endoscopic remission

5  with mesalamine and Imuran immediately prior to Plaintiff's August 2017

6  application.  Tr. 1367.  The ALJ attributed Plaintiff's subsequent flareup to his

7  inability to comply with his treatment regimen.  *Id.*  For instance, Plaintiff was

8  homeless and allegedly did not have access to his medication or a restroom around

9  the date of application; Plaintiff was incarcerated in June 2017 and only eating

10  peanut butter sandwiches; and Plaintiff was taking antibiotics in July and August

11  2017 due to an infection, which impacted the efficacy of his medication.  *Id.*

12  However, by early 2018, Plaintiff's symptoms had improved with taking Imuran.

13  *Id.*  Plaintiff experienced another flare of colitis in 2018 and a restaging

14  colonoscopy in August 2018 revealed that although Imuran had been effective in

15  obtaining remission of Plaintiff's colitis, it was no longer effective.  Tr. 1368.

16  Plaintiff began Humira in December 2018 and showed improvements throughout

17  March 2019.  *Id.*  Due to Humira creating other side effects, however, Plaintiff

18  began Entyvio IV infusions in June 2019, to be administered every six to eight

19  weeks.  *Id.*  From that time forward, Plaintiff reported to providers that his

20  symptoms were very well-managed with the IV infusions.  *Id.*

1    Plaintiff argues that the ALJ mischaracterized this evidence.  ECF No. 9 at

2    7.  Specifically, Plaintiff endorses that he had flareups marked by only brief

3    periods of remission from August 2017 through the time his treatments began and

4    that the evidence is therefore supportive of his disability claim.  *Id.* at 7-8.  Plaintiff

5    also contends that the ALJ overstated his improvements after the time he began IV

6    infusions in 2019.  *Id.* at 9-11.

7        The Court finds that the ALJ did not harmfully err in attributing Plaintiff's

8    pre-IV treatment flareups to his inability to comply with his medication or dietary

9    regimen.  Plaintiff claims that he was unable to comply with treatment at times due

10   to circumstances beyond his control.  ECF No. 11 at 6.  SSR 16-3p requires an ALJ

11   to consider and address a claimant's "reasons for not pursuing treatment that are

12   pertinent to an individual's case."  16-3p, 2017 WL 5180304 (Oct. 25, 2017).  The

13   ALJ did not do so.  Plaintiff's lack of access to his medication and special diet

14   while homeless and incarcerated provides a sufficient explanation for why he was

15   unable to comply with treatment.  Therefore, it was error for the ALJ to rely on

16   Plaintiff's failure to comply with treatment as a basis for rejecting his symptom

17   testimony before beginning IV treatment.  However, because the ALJ's reasoning

18   was otherwise supported by substantial evidence—namely, that Plaintiff's

19   activities of daily living were inconsistent with his reported symptoms—the Court

20   does not find this amounts to harmful error.

1    Plaintiff's arguments that the ALJ overstated his improvements after he

2    began IV infusions fall short.  Plaintiff argues that during the period of alleged

3    remission, he continued to experience flareups, including incontinence, bleeding,

4    and diarrhea.  ECF No. 9 at 10.  Plaintiff further states that his symptoms were

5    partially improved during that time because of his relapse on methamphetamine,

6    which restricted his appetite.  *Id.*

7    Plaintiff is correct in his observation that some medical records confirm that

8    he occasionally experienced flareups of his colitis even while in remission.  *See,*

9    *e.g.*, Tr. 1685 (Plaintiff noted having diarrhea and bleeding on his IV intake form,

10   stating that those symptoms increased with anxiety); 978 (indicating he was not

11   experiencing flareups as frequently with treatment but was still in pain).  However,

12   the same records also reflect what the ALJ wrote in his order: namely, that Plaintiff

13   was in remission with treatment.  Further, the conflicts that do exist in the evidence

14   are relatively marginal—on the whole, they tend to support that while Plaintiff was

15   experiencing some mild symptoms, he was also continuing to improve with

16   treatment.  *See, e.g.*, Tr. 1742 (noting that his colitis had "improved some with

17   [downward arrow icon] episodes"); 1744 ("Ulcerative colitis stable on

18   [medication].").  The Court declines to find that the ALJ's resolution of this

19   conflicting evidence amounted to harmful error.  *See Shaibi v. Berryhill*, 883 F.3d

20   1102, 1109 (9th Cir. 2017) (it is a "fundamental principle" that "an agency, its

1  experts, and its administrative law judges are better positioned to weigh conflicting

2  evidence than a reviewing court").

3  The ALJ also found that Plaintiff's activities were inconsistent with his

4  reported symptoms "[e]ven *during the period prior to June 2019* when [he] started

5  Entyvio [IV] infusions." Tr. 1368 (emphasis added). Specifically, the ALJ noted

6  that in January, March, April and December 2018, Plaintiff reported that he drove

7  a car, shopped in stores, attended two-hour supervised visitations with his son at

8  CPS, attended 12-step meetings for up to 90 minutes, started taking college classes,

9  and went to the gym and had taken up jogging. Tr. 1368-69. Plaintiff was also

10  noted as being able to work at FISH during this time. *Id.*

11  Plaintiff argues that the ALJ erred in finding these activities undercut his

12  symptom testimony. ECF No. 9 at 12. He alleges that these activities "could all be

13  done with bathroom access," and that he was consistently anxious about such

14  access. *Id.* at 13.

15  An ALJ may consider a plaintiff's activities of daily living and rely on skills

16  transferable to the workplace as a basis for discrediting a claimant's subjective

17  complaints. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However,

18  Ninth Circuit case law also stresses that many basic home activities are not

19  transferrable to the workplace environment. *Cottam v. Colvin*, 51 F. Supp. 3d

20  1038, 1050 (E.D. Wash. 2014). "The ALJ must make specific findings relating to

the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (finding that reading, watching television, and coloring are not transferrable to a work environment).

The Court is not persuaded by Plaintiff's contention that all of his activities, such as jogging, making deliveries for FISH, or attending a college lecture, included ready access to a bathroom at all moments. The variety and complexity of Plaintiff's chosen activities tends to support the ALJ's determination that Plaintiff's colitis was not a disabling condition. *Compare, e.g.*, *Nicole N.-M. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1036 (D. Or. 2022) (Plaintiff's difficulties with managing her own hygiene, going grocery shopping, preparing meals, and maintaining custody of her children supported her subjective symptom testimony). Thus, Plaintiff's activities were another appropriate basis for the ALJ to rely upon in discounting Plaintiff's testimony about his colitis.

Accordingly, the Court finds that the ALJ's rejection of Plaintiff's symptom testimony regarding his ulcerative colitis was supported by clear and convincing evidence, as it was contradicted by the objective medical evidence and Plaintiff's activities of daily living.

## B. Shoulder Pain and Carpal Tunnel Syndrome

Plaintiff avers that the ALJ inadequately explained why he was rejecting

Plaintiff's reports of left shoulder pain and carpal tunnel syndrome.  Specifically, he presses that the ALJ did not explain which of Plaintiff's allegations were being discounted.  ECF No. 9 at 13-14.  However, he also admits that he "has not alleged disability primarily from the left arm."  *Id.*

The ALJ wrote that Plaintiff made only limited complaints of his left shoulder and carpal tunnel syndrome in the record and that the record supported improvement post-surgical intervention.  Tr. 1369-70.  The ALJ also noted that when Plaintiff was initially informed he needed surgery for his carpal tunnel syndrome (which was linked to his left shoulder pain), he requested that surgery "be postponed until after his work with the cold weather shelter ended in March 2020 and that his symptoms be treated with pain medication pending surgery."  *Id.* The ALJ then added that Plaintiff's range of activities—such as the ability to prepare meals, do chores, drive, do mechanical work on his motorcycles, play guitar, and work as a delivery driver—supported that "the claimant would be able to perform frequent reaching with the left arm, but only occasional overhead reaching, and would not have any other manipulative limitations."  Tr. 1370.

By Plaintiff's own admission, he did not allege disability due to his left arm pain.  ECF No. 9 at 14.  Even if he had, the ALJ's reasons were supported by the objective medical evidence, which showed improvement post-surgery, and

Plaintiff's activities of daily living, which required the use of his hands and occasional reaching.  Thus, the Court finds the ALJ's analysis was supported.

## C. Mental Health

Last, Plaintiff alleges that the ALJ failed to adequately address his mental health symptoms.  Plaintiff claims that the ALJ erred in characterizing his treatment as "conservative," because he required the prescription of psychiatric medication.  ECF No. 9 at 14 (citing *Drawn v. Berryhill*, No. 16-55882, 728 F. App'x 637, 642 (9th Cir. 2018).  He further claims that the ALJ did not properly consider evidence that he presented as anxious, depressed, sad, stressed, tense, scattered, disorganized, argumentative, and fatigued, and that he made inappropriate statements, had suicidal ideations, and had impaired focus and limited eye contact.  *Id.* at 14-15.  Plaintiff also contends that his activities of daily living did not support the ALJ's finding, as there was evidence that he sometimes struggled with such activities.  *Id.* at 15-16.

First, Plaintiff's claim that the ALJ did not consider evidence of his listed symptoms—such as his anxiety, depression, and diminished judgment—is contradicted by the plain text of the order.  The ALJ specifically wrote that Plaintiff exhibited symptoms of "ADHD, depression, anxiety, trauma, and methamphetamine abuse," and acknowledged that "mental status examinations of the claimant did sometimes note anxious or depressed moo[d], distractability,

below average fund of knowledge, and diminished insight and judgment." Tr. 1370. Thus, it is not a fair characterization of the record to say that the ALJ discounted Plaintiff's mental health symptoms.

The ALJ's finding that Plaintiff only required a limited and conservative course of treatment is likewise well-supported by the evidence. The ALJ supported this finding by looking to the objective medical record, which showed that Plaintiff consistently "documented normal appearance, speech, behavior, mood, affect, thought process and content, orientation, perception, memory, concentration, abstract thinking, insight, and judgment." Tr. 1370. Plaintiff cites *Drawn* for the proposition that having a prescription for his symptoms makes his course of treatment significant. 728 F. App'x at 642. However, Plaintiff's case and the claimant's in *Drawn* are not alike. In *Drawn*, the claimant was hearing voices and "was prescribed a number of psychiatric medications." *Id.* As the ALJ recorded, Plaintiff's symptoms and treatments were not nearly as intensive.

The ALJ's analysis was also supported by its assessment of Plaintiff's activities. The ALJ determined that Plaintiff engaged in a number of high-function social activities, such as working at the FISH shelter, obtaining custody of and caring for his son, attending 12-step meetings, attending Horizons Club multiple times a week, and organizing support groups at his church. Tr. 1370-71.

Additionally, Plaintiff worked informally as a caregiver for his grandfather-in-law. *Id.* at 1371.

Plaintiff submits that the ALJ gave these activities undue weight because he received help with his shelter work and caregiver activities and his son did not remain in his custody on a fulltime basis. ECF No. 9 at 15. Again, it is the province of the ALJ, not the Court, to weigh conflicting evidence. On the whole, these activities support that Plaintiff was able to maintain an active, social lifestyle. As such, the ALJ did not err in rejecting Plaintiff's symptom testimony.

## V. Medical Opinion Testimony

Plaintiff asks the Court to find that the ALJ failed to properly assess the medical opinions of Dr. Kevin Walsh, Dr. Tasmyn Bowes, and state agency sources. ECF No. 9 at 16. The Court reviews each claim in turn.

### A. Dr. Walsh

Plaintiff submits that the ALJ improvidently rejected the medical opinion of Dr. Walsh, who found in October 2017 that Plaintiff "was unable to perform most activities due to his bowel disorder and could not do sedentary work." *Id.* at 17.

As a preliminary matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. 20 C.F.R. § 416.920c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg.

5844-01 (Jan. 18, 2017). The ALJ applied the new regulations because Plaintiff filed his claim on August 11, 2017.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)–(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)-(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 416.920c(b)(2). These factors are explained as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

1
2
3

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

4

20 C.F.R. § 416.920c(c)(1)-(2).

5

The ALJ may, but is not required to, explain how "the other most persuasive

6

factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §

7

416.920c(b)(2).  However, where two or more medical opinions or prior

8

administrative findings "about the same issue are both equally well-supported . . .

9

and consistent with the record . . . but are not exactly the same," the ALJ is

10

required to explain how "the most persuasive factors" were considered.  20 C.F.R.

11

§ 416.920c(b)(2).  These regulations displace the Ninth Circuit's standard that

12

require an ALJ to provide "specific and legitimate" reasons for rejecting an

13

examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

14

As a result, the ALJ's decision for discrediting any medical opinion "must simply

15

be supported by substantial evidence." *Id.*

16

The ALJ found that Dr. Walsh's opinion was unsupported and inconsistent.

17

As to supportability, the ALJ determined that Dr. Walsh's opinion was issued

18

while Plaintiff was experiencing an acute flare of his colitis, was limited to a

19

duration of three to four months, "and was not intended to be an assessment of the

20

claimant's level of functioning for 12 months."  Tr. 1372.  The ALJ also found the

opinion unsupported because Dr. Walsh failed to discuss any objective evidence supporting his conclusion that Plaintiff could not engage in sedentary work, and instead cited his own treatment notes, which only repeated Plaintiff's subjective complaints without any discussion of supportive clinical findings. *Id.* Second, the ALJ found Dr. Walsh's opinion was inconsistent with the record evidence, including a recommendation that Plaintiff contact Workforce about work training programs to engage in once his symptoms subsided, evidence that Plaintiff's symptoms had improved, and evidence that Plaintiff was engaging in various high-functioning activities of daily living. *Id.*

The ALJ's assessment of Dr. Walsh's testimony was supported by substantial evidence. The ALJ appropriately described why Dr. Walsh's testimony was unsupported. 20 C.F.R. § 416.920c(c)(1). Plaintiff criticizes the ALJ's supportability analysis, arguing that Dr. Walsh's containment of his opinion to three to four months was only a prediction of how long his flareup would last. Although the opinion on how long Plaintiff's limitations was a prediction, it was a conservative and time sensitive estimate. The form at issue reads:

> How long do you estimate the current limitation on work activities
> will persist with available medical treatment?
>
> [Answer:] 3-4 months.

Tr. 728.  Therefore, the ALJ accurately determined that Dr. Walsh's opinion— which was issued in October 2017—was necessarily limited to three to four months.

Second, Plaintiff faults the ALJ for finding that Dr. Walsh ignored objective medical evidence and instead credited Plaintiff's subjective statements.  The Court reviewed the report and did not find any explicit reference to another medical report or data.  Dr. Walsh's report draws primarily from the subjective reports of Plaintiff, *see* Tr. 728 (Section C – "Subjective") with minimal objective findings (Section D – "Objective"), Tr. 729, except for Dr. Walsh's own examination, which found that Plaintiff's fistula was *not* infected, *id.*  Therefore, the ALJ's finding of unsupportability was appropriate, as Dr. Walsh failed to consider any other medical findings and limited his opinion to a duration of three to four months.  § 416.920c(c)(2).

Plaintiff also argues that the ALJ erred in his consistency analysis because the Court held in its last order that the objective medical evidence demonstrated Plaintiff was not in remission in 2018, and Plaintiff was recommended the Workforce resources by a different provider, not Dr. Walsh.  ECF No. 9 at 18. Although it appears the ALJ misattributed the Workforce recommendation to Dr. Walsh, the Court never previously concluded that Plaintiff was under a disability in 2018.  Instead, the Court ordered the ALJ to account for the period of time between

1    Plaintiff's alleged onset and the time he began IV treatments.  As recounted above,

2    the ALJ did so on remand.  Thus, the ALJ's finding that the objective evidence and

3    Plaintiff's activities showed he was experiencing improvements in 2018 was not

4    inconsistent with the Court's prior order.  The ALJ's assessment of Dr. Walsh's

5    opinion is supported by substantial evidence.

6         **B. Dr. Bowes**

7         The ALJ partially credited the findings of Dr. Bowes.  The ALJ was

8    persuaded by Dr. Bowes' finding that Plaintiff had moderate limitations and

9    "would be limited to simple tasks in a routine work environment with few

10   changes."  Tr. 1373.  However, the ALJ did not agree with her finding that Plaintiff

11   would have "marked limitations in his ability to maintain regular attendance and

12   work activities within a schedule," noting it was unsupported by Dr. Bowes' own

13   findings and lack of explanation for such.  Tr. 1373.  The ALJ further found that

14   marked limitations in attendance were inconsistent with Plaintiff's ability to

15   reliably attend his 12-step meetings, scheduled visits with his child, and attend to

16   his duties at FISH.  *Id.*

17        Plaintiff urges that the ALJ erred by not incorporating his moderate

18   limitations into the RFC and also erred in discounting Dr. Bowes' finding that he

19   had marked limitations in the areas of attendance and scheduling.  The ALJ's

20   discussion of Plaintiff's RFC includes a discussion of his "mild limitations" in

understanding, remembering, or applying information.  In making this decision, the ALJ noted Plaintiff's activities of daily living, which were relatively complex.  The Court does not find that the ALJ failed to consider Dr. Bowes' report of his moderate limitations in drafting the RFC.

Respecting Dr. Bowes' finding of a marked limitation in attendance, the ALJ appropriately discounted that opinion.  Plaintiff argues the ALJ gave undue weight to his work at the cold weather shelter for FISH, which he said was time-constrained and not representative of a full workday.  ECF No. 9 at 21-22.  However, the hours Plaintiff spent working at FISH each week had no bearing on the question of whether he could be on time to that commitment.  Plaintiff also argues that Dr. Bowes' finding of a marked limitation is unsupported "when in fact she found mild deficits in cognitive functioning."  ECF No. 9 at 20.  The very fact that Dr. Bowes only identified "mild" deficits in cognitive functioning supports the ALJ's rejection of the finding that Plaintiff was markedly limited in his ability to maintain attendance.  The ALJ's opinion is supported by substantial evidence.

**C. State Agency**

Finally, Plaintiff argues that the ALJ failed to properly articulate the supportability factor in analyzing the state agency's report.  However, the ALJ wrote, "I am somewhat persuaded by the prior administrative findings of the state agency medical consultants because the assessment of light work with postural,

hazard, and restroom limitations *is supported by a discussion of the evidence that the consultants reviewed* and upon which they relied (Exhibits 2A and 4A)." Tr. 1371. Thus, the ALJ did in fact explain why he believed the supportability factor was satisfied.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 9) is DENIED.

2. Defendant's Motion for Summary Judgment (ECF No. 10) is GRANTED.

3. The Court enters **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to enter this Order, enter judgment in favor of Defendant, furnish copies to counsel, and **CLOSE** the file.

DATED August 20, 2024.



THOMAS O. RICE
United States District Judge